IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMANDA L. RUBIO,                          )
                                          )
            Plaintiff-Claimant,           )
                                          )        No. 10 C 6529
      vs.                                 )
                                          )        Jeffrey T. Gilbert
MICHAEL J. ASTRUE, Commissioner           )        Magistrate Judge
of Social Security,                       )
                                          )
            Defendant-Respondent.         )

**MEMORANDUM OPINION AND ORDER**

Claimant Amanda Rubio ("Claimant") brings this action under 42 U.S.C. § 405(g),

seeking reversal or remand of the decision by Respondent Michael J. Astrue, Commissioner of

Social Security ("Commissioner"), in which the Commissioner denied Claimant's application for

disability insurance benefits. This matter is before the Court on Claimant's motion for summary

judgment or remand [Dkt.#14]. Claimant argues that the Administrative Law Judge's ("ALJ")

decision denying her application for disability insurance benefits should be reversed and/or that

the case should be remanded for further proceedings. Claimant raises the following issues in

support of her motion: (1) whether the ALJ gave insufficient weight to the opinion of Claimant's

treating physician; (2) whether the ALJ properly analyzed Claimant's credibility; (3) whether the

ALJ failed to build an accurate and logical bridge between the evidence and his conclusion and

reasonably determined that Claimant could perform her past work; and (4) whether the ALJ's

error misstating the vocational expert's opinion was harmless. For the reasons set forth below,

Claimant's motion for summary judgment [Dkt.#14] is denied, and the decision of the

Commissioner of Social Security is affirmed.

# I.  BACKGROUND

## A.    Procedural History

Claimant filed an application for disability benefits on November 8, 2007, alleging a disability onset date of August 19, 2004.  R.49.  Claimant's date last insured was December 31, 2008.[1]  R.51, 128.  The Social Security Administration ("SSA") initially denied her application on May 29, 2008.  R.49.  Claimant then filed a request for reconsideration on June 19, 2008, which the SSA denied on September 12, 2008.  R.67, 49.  Shortly thereafter on October 15, 2008, Claimant requested a hearing before an ALJ.  R.73.

On March 9, 2010, Claimant appeared with her attorney Agustin G. Garcia and testified at a hearing before the ALJ.  R.49.  Vocational expert Susan Entenberg also appeared and testified at the hearing. R.49.  No medical expert testified at the hearing.

On April 30, 2010, the ALJ rendered a decision finding that Claimant was not disabled under the Social Security Act.  R.53-57.  Specifically, the ALJ determined that Claimant "had the residual capacity to perform sedentary work defined in 20 C.F.R. § 404.1567(a) except lifting and carrying no more than 10 pounds occasionally; standing and walking no more than 2 hours in an 8 hour workday; sitting no more than 6 hours in an 8 hour workday; no work at unprotected heights or near moving or dangerous machinery; no climbing ladders, and can only occasionally

---

[1] Because Social Security disability benefits under Title II is insurance against lost income caused by disability, the applicant/worker must show a recent connection to the work force to maintain insured status.  42 U.S.C. § 423(c) and 20 C.F.R. § 404.130.  This generally means the applicant was working in 20 of the last 40 quarters.  For an applicant who is 31 years old or older, the "last date of insured status" generally is five years after his or her date of last work.

negotiate stairs; occasional stooping, kneeling, crouching, and crawling; and normal rest periods." R.53.

On June 1, 2010, Claimant then filed a request for review of the ALJ's decision to the Appeals Council. R. 7, 209. On September 21, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. R. 1-3. Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.      Hearing Testimony – March 9, 2010**

**1. Claimant Amanda Rubio**

At the time of the hearing, Claimant was 56 years old, separated from her husband and living with her son. R.12, 26. Claimant completed school through the 8th grade and had past relevant work experience as a laborer, an accounting clerk and a babysitter. R.12, 14-20. Claimant testified that she was laid off sometime in 2004 when her employer moved to another state. R.24.[2]

Thereafter, she was scheduled for a job interview but had to cancel because she was scheduled for bilateral knee surgery in 2004. R.20. Ten days after her knee surgery, Claimant testified that her son died, and she became depressed. R.21. Claimant, however, stated that she has not seen a psychologist or therapist for her depression. R.34. After her surgery, Claimant testified she could not find a job, so she started babysitting. R.20. Claimant testified that caring

---

[2]  According to the SSA records, Claimant did not have any reported income for 2004 through 2008. R.117, 123. Claimant provided different dates for when she stopped working. At the hearing before the ALJ, Claimant testified that she stopped working sometime in 2004 because she had knee surgery. R.20. Yet, in the work history reports Claimant filled out and submitted to the SSA with her application for disability insurance benefits, Claimant indicated that she had stopped working sometime in March or April 2003 (R.165, 192), which is consistent with the employment history records from the SSA.

for children was hard work, but "fun" and "good for her." R.20-21. She worked as a babysitter until approximately November 2007 when she injured her back after "stepp[ing] down on a big step." R.21. As a result, Claimant's back "went out," and she had difficulty walking. R.21.

After her injury, Claimant testified she experienced tremendous pain and could not take care of the children she had been babysitting. R.21-22. Claimant testified that her back pain interfered with her ability to balance while carrying children. R.23. Claimant testified that she saw a doctor at Mt. Sinai Hospital in November 2007 after she hurt her back and that she had an MRI of her back. R.23. Claimant testified that she has not had surgery (R.22) and that she "always ha[s] some pain." R.31.

Claimant testified that she recently changed doctors because she wasn't happy with the care she had been receiving from Dr. Lauderdale and that he "wasn't doing enough for her." R.33. Claimant testified that she switched to Dr. Park because she thought "there's got to be something wrong with me where they can surgically either fix it or maybe treat it." R.33. Dr. Park recommended that Claimant participate in physical therapy. R.33. Claimant, however, stated that the physical therapy has not been successful. R.22.

Claimant testified that she spends her days doing light cleaning around the house with periodic breaks. R.25-26. She stated that it takes her all day to wash dishes because she has to take a break and sit down because her leg is hurting. R.26. Claimant testified that she doesn't cook that much and when she does cook she prepares simple meals. R.26-27.

Claimant testified that she can walk only a short distance before she starts to experience pain. R.28. She has difficulty doing grocery shopping and either someone else has to finish her shopping or she has to use a motorized cart to go up and down the isles at the grocery store.

R.28.  Claimant testified that she could stand for 20 minutes and could sit for 30 minutes.  R.29.

Claimant also testified that at home she uses a rolling chair to get around the house and that

when she is outside she uses a walker.  R.34-35.  Claimant also stated that she is waiting to have

a ramp installed at her home so that she can use a mobile unit. R.35.

Claimant stated that she is taking Cymbalta, Norco and Lyrica for her depression and

pain and another medication for her diabetes.  R.22.  She testified that the medication makes her

drowsy and that her "mind will drift off on its own."  R.31.  Claimant testified that she enjoys

knitting and that her knitting will slow down when she takes her medication.  R.31.

### 2. Vocational Expert Susan Entenberg

Susan Entenberg testified at the hearing as a vocational expert ("VE").  She described

Claimant's past relevant work as a babysitter, accounts payable clerk and laborer.  R.36.  She

testified that Claimant's past relevant work would be categorized as light and sedentary.  R.37.

While questioning the VE, the ALJ asked what type of work an individual who was closely

approaching advanced age with a limited education and the same past relevant work experience

as Claimant (*i.e.*, sedentary or light work) could perform, if any, with the following limitations:

lifting and carrying no more than 10 pounds occasionally; standing and walking no more than 2

hours in an 8 hour workday; sitting no more than 6 hours in an 8 hour workday with normal rest

periods; inability to work at heights and to climb ladders; occasional ability to negotiate stairs;

and occasional stooping, kneeling, crouching, and crawling.  R.37-38.  The VE testified that

based on the hypothetical given by the ALJ, an individual with the limitations described could

perform the accounts payable job.  R.38.

The ALJ then asked the VE a follow-up question modifying the hypothetical and adding three additional restrictions: walking no more than a quarter block at a time, standing no more than 15 to 20 minutes at a time, and sitting no more than 30 minutes at a time. R.38. The VE responded that based on the revised hypothetical with the additional limitations, an individual's ability would be less than sedentary, and Claimant would not be able to perform her past relevant work. R.38.

**C.     Medical Evidence**

**1. Midwest Orthopedics Records**

Claimant first visited Midwest Orthopedics in or around July 2004 regarding pain in her knees and was diagnosed with osteoarthritis in both knees. R.250. Dr. Mitchell Sheinkop recommended and performed bilateral total replacement knee surgery on August 19, 2004. R.248, 250. Claimant returned for a post-surgery follow-up visit on November 12, 2004 in which Dr. Sheinkop examined Claimant and determined that she had "a very satisfactory response to surgery in addition to very well-appearing x-rays." R.246. In the records from Dr. Sheinkop, there is an undated pre-op worksheet relating to Claimant's knee surgery which indicates that Dr. Patricia Russell is Claimant's primary care physician. R.272. However, there are no medical records from Dr. Russell in the administrative record.

Claimant again visited Midwest Orthopedics on April 11, 2008 complaining of bilateral hand pain for one year and joint pain in many areas. R.243. Claimant was examined by Dr. Mark Cohen. R.243. Dr. Cohen's notes dated April 11, 2008 indicated that on exam there was no swelling or deformity of either hand. R.243. Claimant had full and symmetrical digital motion. R.243. Claimant had stenosing tenosynovitis with palpable nodules and mechanical

symptoms in the left ring and right middle fingers. R.243. Yet, the report indicated that with some effort Claimant was able to make a fist. R.243. Further, Claimant's motor and sensory exams both were normal, and her grip strength was 20 pounds on the right versus 35 pounds on the left. R.243. Both radiographs of the hands were benign. R.243. Dr. Cohen recommended that Claimant see a rheumatology physician for her joint pain. R.243.

### 2. Mt. Sinai Hospital Records

There are Mt. Sinai Hospital outpatient records for Claimant dating from October 11, 2007 through November 29, 2007. R.210-220. The records dated October 11, 2007 are routine laboratory reports, including a urinalysis and chemistry and blood work. R.217-220. The remaining records are dated November 29, 2007 when Claimant sought treatment after she hurt her back. R.210-216.

A CT of the lumbar spine dated November 29, 2007 was limited due to Claimant's obesity. R.210. There was no evidence of any large disc herniations, but the CT scan was suggestive of a small central disc protrusion and spondylosis and further MRI testing was recommended. R.210.

There also is a record from the Department of Neurology at Mt. Sinai Hospital in which Claimant was seen by Dr. Maria Elena Gragasin. R.215-216. Claimant complained of pain and numbness in her right hand and intermittent neck pain. R.215. Dr. Gragasin diagnosed mild or early right carpel tunnel syndrome. R.216.

There are coordinating medical records from Claimant's visits to the Health Center at the Access Community Health Network dating from October 11, 2007 through January 7, 2008 relating to Claimant's back pain and injury. R.221-242.

### 3. Rush University Internists

There are medical records from Rush University Internists for Dr. Vance Lauderdale who was Claimant's treating physician in 2008 and 2009. R.317-325, 329-340. On March 20, 2008, Dr. Lauderdale identified a bulging disc, weight problem, finger and back pain, and pain in hip joint as Claimant's chief complaints. R.317. Dr. Lauderdale ordered an x-ray of Claimant's hip, which was normal. R.318-319. He also discussed weight loss options with Claimant. R.320-321.

As discussed above, Dr. Cohen referred Claimant to a rheumatologist for her joint pain. R.243. Dr. Paul Glickman saw Claimant on May 6, 2008. R.324. He opined that her past history was "essentially unremarkable." and that "[a]side from her severe obesity, her examination was essentially unremarkable." R.324. Dr. Glickman also explained that Claimant's trigger fingers were asymptomatic, and her knees had full range of motion. R.324. He acknowledged that Claimant did have some pain in her buttocks on straight leg rising. R.324. Dr. Glickman ultimately concluded that Claimant "is most likely suffering from generalized osteoarthritis as well as a lumbar radiculopathy" and that she would benefit from losing some weight. R.325.

A MRI dated May 21, 2008 revealed mild lumbar spondylosis without significant canal or foraminal stenosis as well as a small L5-S1 protrusion. R.315. Claimant returned to see Dr. Lauderdale on June 30, 2008 complaining about depression. R.322. Dr. Lauderdale prescribed Cymbalta to address both Claimant's pain and her depression. R.322-323. Dr. Lauderdale again saw Claimant on November 24, 2008 and noted that Claimant has an antalgic gait and significant pain in her right hip from walking. R.331.

### 4. State Agency Physicians

Dr. Charles Wabner performed a residual functional capacity assessment dated April 18, 2008 in which he concluded that Claimant's back and knee arthritis and obesity limited her to sedentary work. R.420-422. Dr. Wabner concluded that the objective medical evidence and Claimant's reported activities did not support any limitations with her hands. R.285-292.

Psychiatrist Dr. Kenneth Levitan examined Claimant and prepared a report on May 7, 2008. R.293. During the psychiatric examination, Claimant told Dr. Levitan that her physical problems made her depressed and that depression would interfere with her ability to work. R.293-294. Dr. Levitan opined that Claimant was depressed secondary to her increasing physical problems and would have difficulty handling regular work pressure and stress. R.295.

Psychiatrist Dr. Glen Pittman reviewed Claimant's medical records, including both her treating sources and the consultative examination performed by Dr. Levitan. R.308. Dr. Pittman acknowledged that Claimant's complaints are chronic back pain, carpal tunnel syndrome, depression and lack of concentration. R.308. He opined that Claimant's depression was not severe because it caused only mild limitations. R.296, 306.

In August 2008, Dr. Marion Panepinto and Dr. Ronald Havens reviewed Claimant's records on behalf of the state agency and affirmed the earlier state agency assessments. R.326-328.

### 5. Dr. Catherine Park – Claimant's Treating Physician After Date Last Insured

There are additional medical records from Rush University Internists and Dr. Catherine Park, who became Claimant's treating physician in September 2009. R.392-402. In September 2009, eight months after Claimant's date last insured, Dr. Park began treating Claimant. A MRI

of the lumbar spine dated October 3, 2009 showed evidence of slight worsening and confirmed lordosis and mild right and moderate left foraminal stenosis. R.359-360. In February 2010, Dr. Park opined that Claimant's osteoarthritis, degenerative disc disease, and morbid obesity limited her to walking one block, no heavy lifting, and sitting for one hour at a time. R.393. Dr. Park also opined that Claimant could not work due to "immobilizing pain and side effects of therapy" and that she was taking prescription medications Cymbalta and Lyrica, which were sedating and that additional treatment was planned and Claimant's prognosis was "fair." R.394.

## D.    The ALJ's Decision – April 30, 2010

After a hearing and review of the medical evidence, the ALJ determined Claimant had the residual functional capacity ("RFC") to perform her past relevant work and therefore denied her application for disability insurance benefits.[3] R.51-57. The ALJ evaluated Claimant's application under the required five-step sequential analysis. R.49-57. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since August 19, 2004, the alleged onset date, through her date last insured of December 31, 2008.[4] R.51.

_____

[3] The RFC is the most that a claimant can do despite the effects of her impairments. 20 C.F.R. § 404.1545(a).

[4] Although the Commissioner did not challenge the ALJ's finding that Claimant had not engaged in substantial gainful activity since August 19, 2004, the Court notes for the record that there is substantial evidence to the contrary. In her brief submitted to this Court in support of her motion for summary judgement, Claimant states that after her knee surgery she returned to work as a self-employed babysitter until November 2007. Claimant's Br. [Dkt.#17], at 2. At the hearing before the ALJ, Claimant testified that after her knee surgery she could not find a job, so she decided not to return to the workforce and instead started babysitting. R.20. Claimant testified that caring for children was hard work, but "fun" and "good for her." R.20-21. Claimant testified that she worked as a babysitter until she injured her back and had difficulty walking. R.21. There is additional evidence in the record, including Claimant's work history report that she prepared when applying for disability benefits, in which she stated that she worked 10 to 12 hours per day, 5 to 6 days a week as a childcare provider from January 2005

10

At step two, the ALJ determined Claimant had the following severe impairments: osteoarthritis of her knees with bilateral knee replacement, degenerative lumbar changes resulting in lordosis and mild right and moderate left foraminal stenosis, morbid obesity, and diabetes mellitus.  R.51.

At step three, the ALJ found that, through her date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R.52.  The ALJ explained that "[a]lthough the record does demonstrate the presence of severe impairments, the severity does not approach the level of severity set forth in any section of the Listing of Impairments." R.52.  In making this determination, the ALJ also considered Claimant's obesity and evaluated its impact on the severity of her impairments as suggested in Social Security Ruling 02-1p.  R.53.  The record shows that Claimant is 5'1" and weighed 297 pounds at the time of the hearing before the ALJ (R.55), and the ALJ concluded that, based on the medical evidence of record, Claimant's obesity did not elevate her other medically determinable impairments to meet a listing. R.53.

The ALJ then proceeded to consider Claimant's RFC and found Claimant capable of performing sedentary work, "except lifting and carrying no more than 10 pounds occasionally; standing and walking no more than 2 hours in an 8 hour workday; sitting no more than 6 hours in an 8 hour workday; no work at unprotected heights or near moving or dangerous machinery; no

---

through March 2007. R.165-166.

climbing ladders, and can only occasionally negotiate stairs; occasional stopping, kneeling, crouching, and crawling; and normal rest periods."[5] R.53.

After considering all relevant evidence, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements regarding "the intensity, persistence, and limiting effects of [those] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R.54. The ALJ concluded that the objective medical evidence "fail[s] to provide strong support for the allegations of symptoms which produce significant limitations on the claimant's ability to perform basic work activities." R.54.

As to Claimant's credibility, the ALJ concluded that "her allegations and reports of limitations are partially credible in light of the overall evidence." R.55. The ALJ recognized that Claimant's medically determinable impairments "can be expected to produce some limitations in function, but the extent of the limitations described by the claimant in terms of limitations in use of her hands, exceeds that supported by the objective medical findings." R.55. As a result, the ALJ found Claimant less than fully credible in her allegation of hand pain, but fully credible in the allegations of her back and hip pain. R.56. The ALJ noted that Claimant "has not generally received the type of medical treatment one would expect for a totally disabled individual." R.56.

----

[5] Sedentary work "involves lifting no more that 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(b).

Additionally, the ALJ adopted the state agency medical consultants' physical assessments and psychological consultant's mental assessments as supported by the longitudinal record and gave less weight to Claimant's treating physician. R.56. The ALJ concluded that the opinion of Claimant's treating physician Dr. Park, who treated her for a relatively brief period of time well after the date last insured, was not supported by the medical evidence and was actually inconsistent with the past treatment notes and diagnostic testing. R.56 The ALJ also relied on the VE's conclusion that if Claimant was limited to sedentary work then she still would have the ability to perform her past work. R.57.

At step four, the ALJ concluded Claimant could perform her past relevant work as an accounts payable clerk. R.56-57. Because of his step four finding, the ALJ did not make a step five finding and concluded Claimant was not disabled under the Social Security Act. R.57.

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere

scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even

when there is adequate evidence in the record to support the decision, however, the findings will

not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the

conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's

decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano

v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical

review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534

F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by

reconsidering facts or evidence, or by making independent credibility determinations." *Elder v.

Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining

whether the ALJ applied the correct legal standards and whether there is substantial evidence to

support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment

"affirming, modifying, or reversing the decision of the [Commissioner], with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.**      **Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a

"disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th

Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected . . .

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An

individual is under a disability if she is unable to do her previous work and cannot, considering

her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises the following issues in support of her motion for summary judgment: (1) whether the ALJ gave insufficient weight to the opinion of Claimant's treating physician; (2) whether the ALJ properly analyzed Claimant's credibility; (3) whether the ALJ failed to build an accurate and logical bride between the evidence and his conclusion and reasonably determined that Claimant could perform her past work; and (4) whether the ALJ's error misstating the vocational expert's opinion was harmless.

**A.**     **The ALJ Reasonably Weighed the Medical Opinions and Evidence**

An ALJ makes a RFC determination by weighing all the relevant evidence of record. 20

C.F.R. § 404.1545(a)(1); SSR 96-8p. In doing so, he must determine what weight to give the

opinions of a claimant's treating physician. 20 C.F.R. § 404.1527. A treating physician's

opinion is entitled to controlling weight if it is supported by the medical findings and not

inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2);

*Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). However, so long as the ALJ

"minimally articulates his reasons," he may discount a treating physician's opinion if it is

inconsistent with that of a consulting physician or other substantial medical evidence. *Skarbek v.*

*Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th

Cir. 2007). The regulations instruct that state agency reviewing consultants are "highly qualified

physicians and psychologists who are also expert in Social Security disability evaluations." 20

C.F.R. §404.1527(f)(2(i).

In April, May and August 2008, the state agency physicians opined that Claimant's

limitations were mild and that she could perform sedentary work, and the state agency

psychiatrist and psychologist opined that Claimant's depression was not severe. R.296, 305,

308. In February 2010, Dr. Park, Claimant's treating physician, opined that Claimant could not

work due to "immobilizing pain and side effects of therapy" and that she was taking prescription

medications that were sedating. R.394.

Claimant argues that the ALJ's decision to assign greater weight to the state agency

physicians' opinions rather than Dr. Park's opinion is "unreasoned." Claimant's Br. [Dkt.#17],

at 6. The ALJ, however, explained that he gave "less weight" to Dr. Park's opinion because her "treatment history was quite brief," and she did not begin to treat Claimant until September 2009 – eight months after her date last insured. R.56. Claimant asserts that Dr. Park reviewed and relied upon the entire treatment record at Rush Hospital in rendering her opinion. Claimant's Br. [Dkt.#17], at 7. However, there is nothing in the record to indicate one way or another what Dr. Park relied upon in rendering her opinion. R.393-394. The ALJ also explained that Dr. Park's opinion was "conclusory" and provided "very little explanation of the evidence relied on in arriving at [her] opinion." R.56.

Claimant also argues that the state agency physicians did not consider her impairments in combination and that they rendered their opinions on the record as it existed in 2008 and did not have the benefit of the longitudinal record. Claimant's Br. [Dkt.#17], at 6-8. While the state agency doctors clearly could not have relied upon any records that Claimant submitted after they rendered their opinions, they did review Claimant's activity reports included in her application for disability benefits to the SSA, her examination reports and treatment notes, and a review of their opinions demonstrates that they considered Claimant's impairments in combination. R. 292, 308, 328. Moreover, Claimant's date last insured was December 31, 2008. The state agency physicians examined Claimant and reviewed her records at the time she was eligible for disability benefits and not 14 months after her date last insured when Dr. Park, Claimant's treating physician, filled out the medical questionnaire dated February 17, 2010 opining that Claimant was not "capable of performing a full time job, that is, 8 hours per day, 5 days per week on a sustained basis." R. 393-394 .

As to the medical records that were submitted to SSA by Claimant's attorney after the date last insured, the Seventh Circuit has recognized that worsening of a claimant's condition after the date last insured does not provide a basis for granting benefits during the relevant time period. *See Thomas v. Astrue*, 352 F. App'x 115, 116 (7th Cir. 2009) (affirming ALJ decision even though there were significant symptoms just after the date last insured because the physicians who evaluates the claimant before the date last insured found his leukemia to be asymptomatic). Moreover, even Dr. Park does not opine that she was evaluating Claimant's condition prior to December 31, 2008, the date last insured.

To the extent that Claimant points to her medical records and a history of complaints as support for her argument that the ALJ unreasonably rejected the opinion of Dr. Park (Claimant's Br. [Dkt.#17], at 7-8), there is no contemporaneous treating physician's opinion in the record that Claimant was disabled at the time she was eligible for disability insurance benefits. The opinion of a treating source, such as Dr. Park, may be rejected based on non-examining medical opinions and other relevant medical evidence from the record. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). Here, the ALJ extensively detailed his review of Claimant's longitudinal medical records and also explained the reasons why he did not give great or controlling weight to the opinion of Dr. Park. R.56. In determining Claimant's RFC in this case, the ALJ reasonably relied, in part, on the medical opinions of the state agency physicians and psychologist, and also on the longitudinal medical record, and the ALJ gave more weight to the state agency physicians' opinions than to Claimant's treating physician, Dr. Park.

Claimant also argues that ALJ erred by not considering the fact that she took pain medication and that he did not find any medical evidence that Cymblata and Lyrica are sedating

as opined by Dr. Park.  R.56.  The Commissioner does not dispute that Lyrica can cause drowsiness.  Commissioner's Response Br. [Dkt.#22], at 8.  Even though these prescription drugs may be sedating, however, that by itself is not enough for the Court to reverse the ALJ's decision.  The Court's  review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings.  *Nelms*, 553 F.3d at 1097.  The medical records show, as the Commissioner points out in his brief, that Claimant did not begin taking Lyrica until May 2009, five months after her date last insured.  R.208.   In addition, Claimant was not prescribed Norco until September 2009 by Dr. Park, again well after her date last insured. R.208.  As stated above, Claimant also did not submit any contemporaneous opinion from a treating physician that she was disabled at the time she applied for disability benefits up until the date she last was insured, when she was last eligible for benefits.

Because the ALJ relied upon objective medical evidence and clearly and comprehensively explained his rationale, the ALJ did not improperly deny controlling weight to Dr.  Park's opinion.  Dr. Park's brief treatment history after the date last insured did not overcome the opinions of the state agency physicians and the relevant longitudinal record in which there was no contemporaneous treating physician's opinion that Claimant was disabled at the time she was eligible for disability insurance benefits.  In addition, Dr. Park did not specifically opine that Claimant was disabled.  Rather, she opined that Claimant was not "capable of performing a full-time job, that is, eight hours per day, 5 days per week, on a sustained basis." R.394.  Based on the medical evidence in the record, the Court concludes that

the ALJ was justified in giving substantial weight to the opinions of state agency doctors, which he amply supported with evidence in the record.

**B.     The ALJ's Credibility Finding Was Not Patently Wrong**

When faced with a claimant alleging subjective symptoms, an ALJ evaluates the credibility of a claimant's testimony about her symptoms.  Social Security Ruling ("SSR") 96-7p.  The ALJ must consider the testimony in light of the entire record and be "sufficiently specific" as to the reasons for her credibility determination.  *Id*.  Since the ALJ is in the best position to observe witnesses, his credibility finding will not be overturned as long as it has some support in the record.  *Dixon v. Massanari*, 270 F.3d 1171, 1178-1179 (7th Cir. 2001).  An ALJ's credibility determination will be reversed only if the claimant can show it was "patently wrong."  *Herr v. Sullivan*, 912 F.2d 178, 182 (7th Cir. 1990).  A discrepancy between the reported complaints and the medical evidence is probative that a witness may be exaggerating her condition.  *Powers v. Apfel*, 207 F.3d 431, 435-436 (7th Cir. 2000).  The Seventh Circuit has recognized that an applicant for disability benefit may "have an incentive to exaggerate their symptoms," and therefore, "an administrative law judge is free to discount the applicant's testimony on the basis of other evidence in the case."  *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

Claimant argues that the ALJ did not follow SSR 96-7p and did not adequately explain his reasoning in making his credibility determination.  Claimant's Br. [Dkt.#17], at 4. We disagree.  In evaluating a claimant's credibility, it is not disputed that the ALJ must comply with SSR 96-7P and articulate his reasons for his credibility evaluations.  *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).  However, contrary to Claimant's argument, the ALJ is not

required to list out the seven factors in his opinion.[6]  Instead, as the Seventh Circuit explained in

*Brindisi*, the ALJ's determination "must contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make clear to

the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statement and the reasons for that weight." 315 F.3d at 787 (citation omitted).

 Here, just as in *Schmidt v. Astrue*, 496 F.3d 833 (7th Cir. 2007), the ALJ cited SSR 96-

7P and identified and discussed relevant evidence to support his credibility finding.  496 F.3d at

843-844; R.53-56.  The ALJ concluded that Claimant's "allegations and reports of limitations

are partially credible in light of the overall evidence." R.55.  The ALJ recognized that Claimant's

medically determinable impairments "can be expected to produce some limitations in function,

but the extent of the limitations described by the claimant in terms of limitations in use of her

hands, exceeds that supported by the objective medical findings."  R.55.

This credibility determination is supported by the evidence.  Specifically, the ALJ

engaged in a detailed analysis of the record, including Claimant's treatment history from the

alleged onset date after the date last insured and through the hearing.  R.54-56.  The ALJ noted

that Claimant reported, and her physician confirmed, good results after her knee surgery, and

that she worked for two years thereafter babysitting small children.  R.54.  The ALJ also noted

---

[6] Social Security Ruling 96-7p requires consideration of: (1) the individual's daily
activities; (2) the location, duration, frequency, and intensity of the individual's pain or other
symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,
effectiveness and side effects of any medication the individual takes or has taken to alleviate
pain or other symptoms; (5) treatment, other then medication, that the individual has received for
the relief of pain or other symptoms; (6) measures other than treatment, that the individual uses
to relieve the pain or other symptoms; and (7) any other factors concerning the individual's
functional limitations due to pain or other symptoms.

that although Claimant reported problems and pain in her hands, the medical records show that

Claimant had full and symmetrical digital motion with normal motor and sensory exam in April

2008.  R.55. Thereafter, the ALJ pointed out that there were no records that show actual

treatment for any impairment with Claimant's hands and that a letter from one of her treating

physician's dated May 7, 2008 indicated that Claimant's trigger fingers were asymptomatic.

R.55.

Based on the medical records, the ALJ found Claimant "less than fully credible in her

allegations of hand pain." R.56.  There is substantial medical evidence to support the ALJ's

credibility determination with regard to Claimant's alleged hand pain, and the ALJ found

Claimant "fully credible in allegations of back or hip pain." R.56.  The ALJ, however, did note

that Claimant "has not generally received the type of medical treatment one would expect for a

totally disabled individual."  R.56.

This is not a case in which the ALJ's credibility finding lacks any explanation or support.

Here,  the ALJ sufficiently articulated his credibility finding.  In light of the various factors that

contributed to the ALJ's credibility determination, the Court cannot say that the ALJ's judgment

is "patently wrong."

In the context of challenging the ALJ's credibility determination, Claimant also argues

that the ALJ ignored and misstated certain evidence in the record that contradicts his RFC

finding that Claimant has the ability to perform work at the sedentary level of exertion.

Claimant's Reply Br. [Dkt.#23], at 1.  Claimant argues that the ALJ misstated her ability to

perform household chores and ignored her use of a walker and cart, and she asserts that her

activities of daily living are consistent with abilities which are less than sedentary exertion.

Claimant's Reply Br. [Dkt.#23], at 1.  The ALJ, however, concluded that Claimant had "mild limitation" in regard to her daily activities.  R.52.  The ALJ found that Claimant is able to care for her own personal hygiene and grooming.  R.52.  She is able to go shopping and perform light household chores. R.52.  Yet, she is no longer able to do gardening, mopping, or moving furniture and she reported having difficulty sewing and knitting. R.52.  Indeed, Claimant testified at the hearing that she dusted, swept, washed dishes and cooked some with breaks. R.25-27. She also testified that she did grocery shopping but could not finish a full grocery trip without someone else's help or using a motorized cart because she could not walk up and down the aisle.  R.28-29.

The ALJ's failure to mention that Claimant had to use a motorized cart is not fatal to his credibility determination or RFC finding.  The ALJ found that Claimant had the ability to perform work at a sedentary level of exertion which for the most part permits an individual to sit, and Claimant's need to use a motorized cart while grocery shopping is not inconsistent with the ALJ's conclusions. Claimant also complains that the ALJ ignored her prescription for Norco for chronic pain. Claimant Br. [Dkt.#17], at 8.  However, as discussed above, the record shows that Claimant did not begin taking Norco until more than one year after her date last insured.  R.370. Therefore, it was not unreasonable for the ALJ not to factors Claimant's taking Norco into his decision.

As the Seventh Circuit has recognized before, "an ALJ need not mention every piece of evidence" (*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), an ALJ need only "minimally articulate his . . . justification for rejecting or accepting specific evidence of disability." *Scheck*, 357 F.3d at 700.  Again, this is not a situation in which the ALJ's RFC determination or

credibility assessment lacks any explanation or support in the record. The ALJ reasonably relied on medical sources and record evidence to determine Claimant's RFC for sedentary work. For all of these reasons, the ALJ's credibility determination is upheld.

**C.      The ALJ Reasonably Determined That Claimant Could Perform Her Past Work**

As stated above, the SSA has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). The steps are followed in order, and if it is determined that a claimant is or is not disabled at a step of the evaluation process, the process will not continue to the next step. R.50. In this case, at step four of the sequential analysis, the ALJ concluded Claimant could perform her past relevant work as an accounts payable clerk. R.56-57. Because of his step four finding, the ALJ did not make a step five finding and concluded Claimant was not disabled under the Social Security Act. R.57.

Claimant argues that the ALJ erred in not referencing Dr. Levitan's opinion in his decision. Claimant asserts that an ALJ is required to evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not simply dismiss a line of evidence that might be contrary to the ruling. Claimant's Br. [Dkt.#17], at 9 (citing SSR 96-8p). Dr. Levitan examined Claimant, and during that examination, Claimant told him that her physical problems made her depressed and that depression would interfere with her ability to work. R.293-294. Dr. Levitan opined that Claimant was depressed secondary to her increasing physical problems and would have difficulty handling regular work pressure and stress. R.295. Dr. Levitan, however, did not opine that Claimant could not work or that she was disabled.

Dr. Levitan's opinion is not contrary to the ALJ's RFC determination as Claimant suggests.  Indeed, Dr. Pittman reviewed Claimant's medical records, including both her treating sources and the consultative examination performed by Dr. Levitan, and acknowledged that Claimant's complaints are chronic back pain, carpal tunnel syndrome, depression and lack of concentration. R.308.  He opined that Claimant's depression was not severe because it caused only mild limitations. R.296, 306.  Although the ALJ may not have specifically addressed Dr. Levitan's opinion in his decision, Dr. Levitan's opinion was incorporated by reference in Dr. Pittman's opinion that Claimant had only mild limitations as a result of her depression. These opinions are  not inconsistent.  While Claimant may have difficulty handling regular work pressure and stress as Dr. Levitan opined, he did not opine that she was disabled as a result of these limitations and unable to work.  To the contrary, after considering Dr. Levitan's opinion and other records, Dr. Pittman classified Claimant as having only mild limitations.

There is substantial evidence in the record to support the ALJ's decision that Claimant had the RFC to perform her past relevant work at a sedentary level of exertion.  The ALJ reasonably considered and weighed that evidence.  It is not the Court's role to re-do that analysis on this record.

**D.      The ALJ's Misstatement About The VE's Testimony Was Harmless Error**

Finally, Claimant argues that the ALJ erred in reporting that the vocational expert testified that Claimant was capable of performing her past work at a less than sedentary level of exertion.  Claimant's Reply Br. [Dkt.#23], at 5; R.57.  Claimant is correct, and the Commissioner agrees, that the ALJ erred in stating that Claimant would be able to perform her past work if her ability were further limited to a less than sedentary.  In response to the ALJ's

revised hypothetical, the VE clearly opined that Claimant's ability would be less than sedentary, and Claimant would not be able to perform her past relevant work. R.38.

This mistake, however, is not fatal to the ALJ's opinion. Administrative error may be harmless. A court should not remand a case to the ALJ for further specification when it is convinced that the ALJ will reach the same result. *McKinzey v. Astrue*, -- F.3d --, 2011 WL 2162903, at * 7 (7th Cir. June 3, 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir 2010). That would be a waste of time for Claimant, the Commissioner, and the Court. Thus, a court should "look at the evidence in the record to see if [it] can predict with great confidence what the result on remand will be." *McKinzey*, 2011 WL 2162903, at *7 (citing *Spiva*, 628 F.3d at 353).

Here, a review of the record convinces us that no reasonable ALJ would reach a contrary decision on remand regarding Claimant's RFC. The additional restrictions included in the ALJ's modified hypothetical included: walking no more than a quarter block at a time, standing no more than 15 to 20 minutes at a time, and sitting no more than 30 minutes at a time. R.38. Looking at these three additional limitations in the context of the evidence in the record, it is clear that no reasonable ALJ would reach a contrary decision on remand regarding Claimant's RFC. Claimant's own treating physician opined that Claimant could walk one block and not only a quarter of one block as Claimant testified at the hearing, and that Claimant could sit for one hour at time and not for 30 minutes as Claimant testified. R.28, 29, 393.

The Court also is compelled to emphasize that Claimant's testimony at the hearing before the ALJ was given in March 2010 – over fourteen months after the date last insured. To be eligible for disability benefits, Claimant must have been disabled on or before December 31, 2008, and her abilities and limitations at the time of the hearing are not relevant. As stated

above, worsening after the date of last insured does not provide a basis for granting benefits during the relevant time period. *See Thomas*, 352 F. App'x at 116. Moreover, even Dr. Park does not opine that she was evaluating Claimant's condition prior to December 31, 2008, the date last insured. In addition as discussed above, Claimant did not submit any contemporaneous opinion from a treating physician that she was disabled during the time she applied and was eligible for disability benefits.

Even though the ALJ misstated the VE's opinion based on the modified hypothetical proposed at the hearing, the ALJ did not include those additional limitations in Claimant's RFC. As set forth in his opinion, the ALJ determined that Claimant "had the residual capacity to perform sedentary work defined in 20 C.F.R. § 404.1567(a) except lifting and carrying no more than 10 pounds occasionally; standing and walking no more than 2 hours in an 8 hour workday; sitting no more than 6 hours in an 8 hour workday; no work at unprotected heights or near moving or dangerous machinery; no climbing ladders, and can only occasionally negotiate stairs; occasional stooping, kneeling, crouching, and crawling; and normal rest periods." R.53. Based on this RFC, the VE opined that Claimant could perform her past work. R.37-38, 53.

Although the ALJ misstated the VE's conclusion in relation to the modified hypothetical, the ALJ ultimately did not include those additional limitations in Claimant's RFC, and the evidence in the record does not support inclusion of those additional limitations. Therefore, the ALJ's mistake was harmless, and "[i]t would serve no purpose to remand this case to the ALJ for a statement of the obvious." *McKinzey*, 2011 WL 2162903, at *7.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant

Amanda Rubio's motion for summary judgment [Dkt.#14] is denied, and the decision of the

Commissioner is affirmed.  This is a final appealable order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated: August 24, 2011